[Civ. No. 5100. Second Appellate District, Division One.—April 12, 1928.]

MARTHA A. BURTON, Respondent, v. EMMA F. CURTIS, Appellant.

12

Geo. M. Harker and Harry Hirsh for Appellant.

Charles E. Williams for Respondent.

HOUSER, **J.**—The main purpose of the action in controversy was to recover damages for an alleged breach of contract. In order to establish that a breach of the contract had occurred, it was first necessary that the contract as signed by the parties thereto be reformed. It appears that the plaintiff, who was the owner of certain personal property consisting of the furniture and furnishings of an apartment house, sold the same to defendant, and that, according to the final written agreement between the parties, whatever sum in excess of $16,500 *"net"* was received by defendant on a resale by her of the property was to be placed to the credit of plaintiff on account of an indebtedness of

$2,500 owing by plaintiff to defendant, which indebtedness was evidenced by a promissory note and trust deed. A part of such indebtedness arose from the claim of defendant that the sum of $500 thereof represented the cost of assigning from plaintiff to defendant a lease of the real property upon which stood the apartment house in which the furniture and furnishings sold by plaintiff to defendant were located.

In accordance with the allegations contained in the complaint, on the trial of the action plaintiff attempted to prove that, notwithstanding the language of the contract as finally written, to wit: in effect that whatever sum in excess of $16,500 *net* for which the property might be sold was to belong to plaintiff, the intention of the parties was that any sum in excess of $16,500 (omitting the word "net") which the property might bring on a resale was to become the property of plaintiff.

Section 3399 of the Civil Code provides that: "When, through fraud or a mutual mistake of the parties, or a mistake of one party, which the other at the time knew or suspected, a written contract does not truly express the intention of the parties, it may be revised on the application of a party aggrieved, so as to express that intention, . . . "

█ Originally the proposed contract between the parties, which plaintiff had read, or which had been read to her, and with which she was thoroughly familiar, did not contain the word "net" in connection with the resale price of the personal property. No claim is made by plaintiff that the interlineation of the word "net," following the figures "$16,500," arose from a "mutual mistake of the parties"; but the prayer of the complaint for a reformation of the contract rests on the allegation that the insertion of the word "net" had its origin in the "mistake of one party which the other at the time knew or suspected," and by reason of which alleged mistake the contract failed to "truly express the intention of the parties." The findings, conclusions of law and judgment by the trial court are all in accordance with the allegations of the complaint. Appellant, however, contends that such findings of fact are not supported by the evidence. An examination of the testimony of plaintiff shows that, so far as she was concerned, at the time she signed the contract she had no knowledge

that the word "net" followed the statement of the resale price of $16,500, and assumed that no change had been made in the language used in the contract between the time when she read it, or it was read to her, and the time when the contract was signed by her. On the other hand, defendant testified to facts from which it appeared that she had knowledge of the fact that such change had been made. The conclusiveness of the finding that such change was made without the knowledge or consent of plaintiff, and that the alleged mistake on the part of plaintiff in. signing the contract in its altered form constituted a mistake on her part which was known or suspected by defendant, depended entirely upon the credibility which the trial court accorded to the testimony of the several witnesses in the case. While witnesses on behalf of defendant testified in substance that prior to the time when plaintiff signed the contract the matter relating to the appropriate insertion therein of the word "net" was fully discussed by plaintiff and defendant in the presence of witnesses, and that at the same time, with the consent of plaintiff, such word was interlined in the language of the contract as it finally appeared, it was the province of the judge of the trial court to weigh the evidence and to determine where lay the truth. He had the right to accept as true the whole or any part of the testimony of any of the witnesses; and, judging solely from the findings, it is clear that he adopted as true the statement on the part of plaintiff that she did not know of the change made in the contract; and from the testimony of defendant and her witnesses, that at the time the contract was executed defendant "knew or suspected" that the "mistake" on the part of the plaintiff had been made. It follows that appellant's point cannot be sustained.

Appellant also complains that after in substance finding that the contract (as finally written and signed) with the word "net" following the stipulated basic resale price of $16,500 for the personal property did not "truly express the intention of the parties," but that the contract should be revised so as to express their intention to the effect that the resale price might be $16,500 without reference to whether such sum was to be considered as "net"— the further finding of fact was made by the court that the sale of the personal property was made for the sum of

$19,000, and that in the circumstances defendant should be allowed a five per cent commission as a reasonable brokerage charge to be paid to the agents who brought about the sale, as an offset against the difference between the sale price of $16,500 and the $19,000 for which the personal property was actually sold. Appellant directs attention to the fact that no issue was presented by the pleadings as to what constituted a reasonable brokerage commission for the sale of the property, as well as to the further fact that no evidence was introduced by either party to the litigation with reference thereto. It is apparent that if the proposed sale price of $16,500 was not to be construed as "net," and in pursuance of the terms of the contract between the parties a credit for broker's commission for effecting a sale of the personal property was not within their contemplation, no allowance therefor should have been made to defendant by the trial court. But it is also clear that by allowing such a commission as an offset to defendant, she was benefited thereby to the extent of $950, and consequently cannot be heard to complain on account thereof.

In the original transaction between the parties, in payment of the furniture and furnishings belonging to plaintiff, defendant transferred and conveyed to plaintiff certain real property. In order to adjust the difference in values of the respective properties, etc., it was agreed that plaintiff give to defendant a note and trust deed, amounting to the sum of $2,500, covering the real property in the transaction. The agreement then provided that:

"And it is further agreed that the party of the first part (defendant) will use $500 of the amount secured by said trust deed note in her favor to pay the amount demanded by the landlord of the said Hirsh Apartments as a condition precedent to securing an assignment of the lease of said premises from party of the second part (plaintiff) to party of the first part (defendant), the remaining $2000 secured by said trust deed note to be and remain the property of the party of the first part, subject to the conditions hereinafter stated."

On the trial of the action it was shown that plaintiff never had a lease of the real property upon which the apartment house was located, and consequently that nothing was paid by defendant for the assignment of such supposed

lease. However, it was shown that several months later, when the furniture and furnishings were resold, defendant did pay the sum of $500 to the landlord for an assignment of a lease which she had acquired from the landlord after the original transaction had taken place between the plaintiff and defendant. The conclusion of the trial court was that defendant held the $500 for the use and benefit of plaintiff, and judgment was ordered accordingly. With reference thereto, appellant does not contend that the evidence does not support the findings. The criticism is that as it appeared that the $500 was actually spent by defendant in obtaining an assignment of a lease, defendant should not be obligated to repay the amount to plaintiff. But it should be remembered that the agreement was that the $500 should be used for the purpose of obtaining a *particular* assignment of a specified lease, which was not the assignment which defendant procured; and that according to the finding and conclusion by the trial court the amount actually paid by defendant for the assignment could not be credited to her for the reason that the contract between the parties (as reformed) did not permit of such allowance to defendant on a resale of the personal property.

It is ordered that the judgment be and it is affirmed.

Conrey, P. J., and York, J., concurred.