[Civ. No. 8413. First Appellate District, Division Two.—June 22, 1932.]

METROPOLITAN CASUALTY INSURANCE COMPANY OF NEW YORK (a Corporation), Appellant, v. J. C. STONE et al., Respondents.

Bronson, Bronson & Slaven and Harold R. McKinnon for Appellant.

Byron Coleman for Respondents.

STURTEVANT, J.—This is an action to recover on an indemnity contract. In its amended complaint the plaintiff pleaded two counts. In the first count it pleaded a mutual mistake; in the second count it pleaded the mistake of the plaintiff and that such mistake was known or suspected by the defendants and it prayed to have the instrument reformed and for judgment on the instrument as so reformed. The trial court made findings in favor of the defendants. From the judgment entered thereon the plaintiff has appealed.

For many years prior to the year 1927, a tract of land located at Winehaven in Contra Costa County was owned by Calwa Company, a corporation. In 1927 Oswald Wilson conceived the idea of acquiring said property and erecting thereon an industrial alcohol plant. He interested the other defendants as associates. Each is a prominent business man and of such standing that the use of his name was supposed to be a drawing card in making sales of stock. To each of the defendants was allotted 3,000 shares, or more, of class "B" stock in consideration of his services as a promoter. Each expected to make large earnings on his portion of the stock so to be issued. A tentative agreement to buy and sell was arranged with Calwa Company. The promoters commenced to form a corporation under the laws of Delaware to be named Winehaven Chemical Company; but the corporation not having been formed, and desiring

to proceed, it was arranged that title be taken in the name of Pacific Corporation Company, a California corporation, having an office in San Francisco and engaged in promoting enterprises. By the terms of the purchasing agreement the Calwa Company agreed to sell for $600,000 as follows: $450,000 in cash, $100,000 par value of bonds, and 2,000 shares of the class "A" stock of the corporation so to be formed. It was further provided that $1500 should be paid monthly for five months, which sum would be credited on the $450,000 above mentioned. It was further agreed that the purchaser would within six months install improvements at a cost of not less than $200,000. For the faithful performance of the covenant last named, it was agreed that the purchaser would furnish a surety bond in the sum of $25,000. To induce this plaintiff to execute said bond the defendants called on the plaintiff's agent, Mr. D. Elmer Dyer. After many interviews the plaintiff at its demand received the indemnity contract sued on and the plaintiff executed its bond in favor of the Calwa Company. Thereupon the Calwa Company executed and delivered its contract of sale to the Pacific Corporation Company. Thereafter, and within the six months designated in the bond as the time within which the improvements would be installed on the Winehaven property, said improvements had not been installed and the Calwa Company started proceedings to enforce the bond. The plaintiff notified the defendants and later paid the $25,000. Thereupon this action was commenced.

The bond executed by the plaintiff is as follows:

"Know all men by these presents:

"That the undersigned, The Metropolitan Casualty Insurance Company of New York, a corporation organized under the laws of the State of New York, is held and firmly bound unto Calwa Company, a corporation organized under the laws of the State of California, in the sum of twenty-five thousand dollars ($25,000.00), gold coin of the United States, well and truly to be paid, for payment whereof the undersigned hereby binds itself and its successors and assigns firmly by these presents. The condition of the above obligation is such that whereas said Calwa Company has this day entered into an agreement with Pacific Corporation Company

for the sale by said Calwa Company to said Pacific Corporation Company of certain real property therein described upon the terms and conditions therein set forth:

"Now, therefore, if within six (6) months from the date hereof said Pacific Corporation Company shall install upon the said real property improvements, free and clear of all liens and other charges, at a cost to Pacific Corporation Company of not less than two hundred thousand dollars ($200,000.), or if within six (6) months from the date hereof Pacific Corporation Company shall pay to Calwa Company twenty-five thousand dollars ($25,000.) on account of the purchase price of said real property in addition to any monthly payments required under said agreement, then the above obligation shall be void, otherwise the same shall remain in full force and effect."

The indemnity contract sued upon contains, among others, the following passages:

"Know all men by these presents, That whereas, at the request of the undersigned hereinafter referred to as indemnitors, and upon condition that this instrument be executed, The Metropolitan Casualty Insurance Company of New York, hereinafter referred to as the Company, a corporation of the State of New York, has executed, or procured the execution of, or is about to execute or procure the execution of, a bond or bonds on behalf of Oscar Krenz, F. M. Edwards, Oswald Wilson, P. C. Salterbach, A. J. Uren, J. C. Stone, hereinafter referred to as principal, and in favor of Calwa Company, copy or copies of which may be hereto attached.

"And whereas, the indemnitors have a substantial, material and beneficial interest in the obtaining of the said bond or bonds.

"Now, therefore, in consideration of the premises and the sum of one dollar ($1.00) this day paid by the company to each of the indemnitors, receipt of which is hereby acknowledged, the indemnitors, and each of them, for themselves, their and each of their heirs, executors, administrators, successors and assigns, jointly and severally, do hereby covenant and agree: . . .

"In testimony whereof, the indemnitors have hereunto set their hands and affixed their seals this 14th day of June, 1927.

"J. C. Stone (signed)        (Seal)
"P. C. Salterbach (signed)
"Oswald Wilson (signed)    (Seal)
"F. M. Edwards (signed)
"A. J. Uren (signed)        (Seal)
"Oscar R. Krenz (signed)."

Except as set forth, no other person, natural or artificial, is named therein.

The contract of sale by the Calwa Company contained a paragraph as follows:

"Tenth: Contemporaneously herewith the Buyer shall deliver to the Seller the undertaking of a surety company satisfactory to the Seller in the sum of twenty-five thousand dollars ($25,000.) conditioned upon the failure by the Buyer within six (6) months from the date hereof either to install upon the premises improvements, free and clear of all liens and other charges, at a cost to the Buyer of not less than two hundred thousand dollars ($200,000.), or else to pay to the Seller on account of the purchase price hereof in addition to the monthly payments hereinabove stated the sum of twenty-five thousand dollars ($25,000.). All remedies of the Seller for any default by the Buyer in the performance of any obligation hereof shall be restricted to the option granted to it by paragraph Eighth hereof and to the enforcement of said undertaking without recourse against the Buyer either for the specific performance of this contract or the recovery of the purchase price or damages for the breach hereof."

On the hearing in the trial court Mr. Dyer, the agent of the plaintiff, and all but one of the defendants, were called and examined, and the deposition of the remaining defendant was read. The evidence so produced contains no conflict on the following elements: There was one sole indemnity contract discussed by the parties; there was one sole liability to be protected against; there was no thought expressed that the plaintiff would, or that it should, assume the burden of bearing the default of the promoters or of the corporation which the promoters were in the act of forming; there was no thought that the Pacific Corporation Company

was financially responsible or that it was willing to assume any responsibility except to act as a dummy purchaser; the question of its responsibility was never discussed nor inquired into; and the one thing discussed and being arranged for was the sole matter of obtaining the contract of sale from the Calwa Company for the Winehaven Chemical Company (which was in process of being created) and which was to take and hold the properties to be acquired as the agent of the defendants and their associates. One of the principal considerations flowing to the plaintiff for the execution by it of the bond to the Pacific Corporation Company was the indemnity contract. Without adequate indemnity the plaintiff would not have executed said bond. Without the giving of said bond the sale by the Calwa Company would have fallen and the defendants' enterprise would have earned nothing, whereas each defendant anticipated and looked for large returns. As shown by the evidence, each defendant anticipated that from the proceeds of sales of stock the $200,000 in improvements would be paid and no claim for $25,000 would be made; and that there would be no liability on the contract in suit. To protect this plaintiff against the possible claims of the Calwa Company for the payment of $25,000 under section 10 of the sales contract was the sole subject of the conversations held. As to the phraseology of that contract of protection these defendants never spoke nor asked to speak. But Mr. Dyer told them what was needed and all the defendants left it to him to write the agreement. When the plaintiff's agent attempted to do so the instrument as written did not clearly portray the intention of the parties. Instead of the condition as written "a bond or bonds on behalf of Oscar Krenz, F. M. Edwards, Oswald Wilson, P. C. Salterbach, A. J. Uren, J. C. Stone", the instrument should have been "a bond conditioned on the performance by Pacific Corporation Company of certain covenants contained in an agreement of date June 10, 1927, by and between Calwa Company and Pacific Corporation Company being", etc. As so changed the instrument would have expressed the intentions of all of the parties as portrayed by the evidence which is fully set out in the record. That a court of equity may so reform a written instrument is provided by statute. (Civ. Code., secs. 3399–3402.) In the exercise of that jurisdiction it must be presumed that all

the parties thereto intended to make an equitable and conscientious agreement. (Civ. Code, sec. 3400.) The court may inquire what the instrument was intended to mean, and what were intended to be its legal consequences, *and is not confined to the inquiry what the language of the instrument was intended to be.* (Civ. Code, sec. 3401; *F. P. Cutting Co.* v. *Peterson,* 164 Cal. 44 [127 Pac. 163].)

The case of *Gillanders* v. *Da Silva,* 212 Cal. 626 [299 Pac. 722], is closely parallel in principle. Da Silva desired to operate a jitney. Before doing so the provisions of an ordinance required that he should execute a bond. He applied to the Zurich Insurance Company for a bond insuring him in the operation of a Haynes automobile. The insurance company issued a policy covering the operation of an Oldsmobile automobile. The driver met with an accident and Grace Gillanders was injured. She commenced an action to have the bond reformed and to obtain judgment thereon. Judgment was rendered in her favor and on appeal the judgment was affirmed. In *Oatman* v. *Niemeyer,* 207 Cal. 424 [278 Pac. 1043], the facts showed that the plaintiff agreed to care for an aged man by the name of Garrison. In consideration for her services he agreed to convey to her his real estate. He executed a document purporting to be a grant, bargain and sale deed, but did not insert a description of the land. It thus appears that as a conveyance the purported deed was void. By appropriate pleadings the plaintiff sought to have the deed reformed. The trial court gave her judgment and on appeal, at page 427, the court said: ''The instrument may be void in such a case because of the mistake, but there is still a valid contract; and the contract being valid, equity will reform the instrument to make it what it should be, and would have been except for the mistake. There is no making of a new contract in such a case. There is but the making of a new instrument, either to correctly express the contract or to carry it into effect. (Civ. Code, sec. 3399; *House* v. *McMullen,* 9 Cal. App. 664 [100 Pac. 344]; *Merkle* v. *Merkle,* 85 Cal. App. 87 [258 Pac. 969].)'' To the same general effect are *Murphy* v. *Lacey,* 204 Cal. 94 [266 Pac. 535]; *Starr* v. *Davis,* 105 Cal. App. 632 [288 Pac. 706]; *Wolfe* v. *Morgan,* 95 Cal. App. 656 [273 Pac. 64]; *Merkle* v. *Merkle, supra; Burton* v. *Curtis,* 91 Cal. App. 11 [266 Pac. 601].

■ The defendants contend that the plaintiff should not be given any relief because the mistake, if any, arose by reason of the plaintiff's negligence. To that contention there are two answers. In the first place the trial court made no finding that the plaintiff was guilty of negligence. (*Mahoney* v. *Standard Gas Engine Co.*, 187 Cal. 399, 407 [202 Pac. 146].) In the second place there is some evidence that when the bond was originally discussed these defendants were to be required to execute it; that thereafter it appeared the better plan was to act through the Pacific Corporation Company and that the fault in the execution of the indemnity contract, if any, was as much the neglect of the defendants as it was of the plaintiff.

■ The defendants assert that the bond is a penal obligation and that in paying the sum of $25,000 the plaintiff acted as a volunteer. An examination of the record discloses that neither point was made in the trial court. However, neither is well founded. Under the terms of the contract between the Pacific Corporation Company and the Calwa Company the sales price was fixed at $600,000. The contract contained no provision whereby under any circumstances that price was to be augmented by any penalty. The purchase price was to be paid at the rate of $1500 per month, which sums were to be credited on the purchase price. It was further covenanted that the purchaser would, within six months from June 10, 1927, install improvements in the sum of $200,000. If it did not do so it was then provided that the purchaser was to pay the seller $25,000 "on account of the purchase price thereof in addition to the monthly payments hereinabove stated". The terms of the bond were identically the same. The covenant hastened the due date on a part of the purchase price. It imposed no penalty. ■ On December 30, 1927, the purchaser was in default in not paying the $25,000 so due on the purchase price. Under paragraph 8 of its contract the seller had the option of terminating the contract because the $25,000 had not been paid. But by the terms of the tenth paragraph of the contract its termination was no waiver of its right to receive the $25,000. After terminating the contract, whether in possession or out of possession, the Calwa Company still had the right to demand and receive from this plaintiff $25,000 as due on the purchase price. (*Adams* v. *Anthony*,

178 Cal. 158 [172 Pac. 593].) In asserting that the plaintiff acted as a volunteer in making the payment, the defendants cite and rely on *United States Fidelity etc. Co.* v. *More,* 155 Cal. 415 [101 Pac. 302]. It is not in point. The bond in that case, as determined by the court, was void. Payments under void contracts may be said to be voluntary, but payments under valid contracts are not so considered. (31 C. J. 440.) It is therefore clear that the plaintiff was neither a volunteer nor was the bond a penal obligation.

The defendants claim that the principal in an undertaking is not bound and unless the principal is bound the surety cannot be bound. This point is made on the assertion that the Pacific Corporation Company was not obligated to pay to the Calwa Company the sum of $25,000. As recited in the last paragraph it is our view that it was so obligated.

Finally, it is contended that the so-called bond was exonerated by the election of the Calwa Company to terminate its contract. It will not be controverted but that under some circumstances the termination of a contract to buy and sell would exonerate the bondsmen. However, these are matters involving the terms of the contract. Under the clear terms of the contract involved in this case the bondsmen were not exonerated.

It follows that the judgment should be reversed and that the case should be remanded for further proceedings not inconsistent with what has been said above. It is so ordered.

Nourse, P. J., and Spence, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on July 22, 1932, and an application by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 18, 1932.