Filed 10/27/23  Southwest Painting v. Newcastle Enterprises CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| SOUTHWEST PAINTING, INC., <br><br> Plaintiff, Cross-defendant and Appellant, <br><br> v. <br><br> NEWCASTLE ENTERPRISES, LTD., <br><br> Defendant, Cross-complainant and Respondent. | G061496 <br><br> (Super. Ct. No. 30-2019-01099958) <br><br> O P I N I O N |

Appeal from a postjudgment order of the Superior Court of Orange County, Derek W. Hunt, Judge.  Reversed and remanded with directions.

John L. Dodd & Associates, John L. Dodd; Law Offices of John R. Lobherr and John R. Lobherr for Plaintiff, Cross-defendant and Appellant.

Law Offices of Gary R. Carlin, Gary R. Carlin and Alexander F. Zaimi for Defendant, Cross-complainant and Respondent.

Southwest Painting, Inc. (Southwest) entered into at least three contracts with Newcastle Enterprises, Ltd. (Newcastle) to perform painting services, fascia repair, and siding removal and installment services at an apartment complex owned by Newcastle. Southwest later sued Newcastle for breach of contract to recover unpaid compensation for painting services it performed pursuant to the parties' painting contract. Newcastle filed a cross-complaint for breach of contract and fraud-related claims against Southwest, alleging Southwest performed substandard work and its principal had mirepresented Southwest held a license to perform fascia repair and siding installment.

Following a trial, the jury found Newcastle breached the painting contract and was liable to Southwest for over $91,000 in unpaid compensation for its painting services. The jury also found Southwest had not breached any contract for other work at the apartment complex and further found its principal had not negligently or intentionally induced Newcastle to enter a contract with Southwest by misrepresenting a material fact.

The trial court thereafter invited briefing regarding the legal effect of Business and Professions Code section 7031[1] on Southwest's ability to recover unpaid compensation for painting services and Newcastle's ability to recover amounts already paid to Southwest due to the status of Southwest's licensure. The trial court issued a statement of decision concluding section 7031, subdivision (a) (section 7031(a)) barred Southwest from recovering unpaid compensation for painting services because it had also performed fascia and siding work for Newcastle without the required licensure. For the same reason, the trial court concluded, under section 7031, subdivision (b) (section 7031(b)), Southwest must be ordered to disgorge all compensation it received from Newcastle, totaling $252,444. Judgment was entered accordingly.

---

[1] All further statutory references are to the Business and Professions Code unless otherwise specified.

Southwest filed a motion to vacate the judgment and enter a new judgment under Code of Civil Procedure section 663. The trial court tacitly denied the motion. For the reasons we will explain, we reverse and remand with directions.

FACTS

Newcastle owns Castlewood Park, a 183-unit apartment complex located in Buena Park. In 2018, through three separate written contracts, Newcastle retained Southwest as a contractor to repaint the entire complex, repair fascia, and remove and replace existing siding with manufactured stone veneer siding.

On August 10, 2018, the parties signed "BID # P2076" by which they agreed Southwest would "complete exterior paint[ing] of 183 units." (Boldface, underscore, and some capitalization omitted.) The painting contract provided Southwest would be compensated for work performed under that contract for the total amount of $181,150. On August 20, 2018, the parties signed an amendment to the painting contract to include painting the complex's laundry rooms.

Also on August 10, 2018, the parties signed "BID # W2081" by which they agreed Southwest would perform "wood repairs as listed on summary list" (the fascia contract). (Capitalization omitted.) The fascia contract stated it involved "total linear footage [equaling] 1444 . . . of 2 x 8 fascia board." (Capitalization and boldface omitted.) At trial, Newcastle's principal testified, "The original fascia contract was for $17,328." (The parties entered into a subsequent written agreement regarding additional fascia work to be completed for the further sum of $2,900.)

Finally, on August 20, 2018, the parties signed "BID # 2088" providing for Southwest to perform work described as "wood siding replace[ment] with stone as listed on summary list," for the sum of $955,000 (the siding contract).[2]

At all relevant times, Southwest held a valid Class C license sufficient for performing commercial painting services. The other work Newcastle retained Southwest to perform (e.g., replace fascia, remove and replace siding) generally required a Class B license which Southwest "either never had at all, or only later secured surreptitiously th[r]ough . . . Hector Villareal [who held such a license] after the work had already commenced."

Southwest's owner and manager, Victor Medina, testified he initially and erroneously believed the siding contract was a do-it-yourself project, given the siding manufacturer's instructions.[3] It is unclear when Southwest realized it had agreed to and undertaken Class B work, but it is certain it had recognized and addressed the problem by October 24, 2018 when it entered into an "Independent Service Agreement" with Villareal and his company. It was this agreement (undisclosed at this time to Newcastle) that on November 16, 2018, enabled Southwest to obtain a Class B license via Villareal; Villareal, however, "disassociated" five months later.

In 2019, Newcastle removed Southwest from the project citing alleged deficient workmanship.

---

[2] The siding contract was later amended to provide "ancillary expenses" imposed by the City of Buena Park for Southwest to complete work under the contract, such as permit fees, would be paid out of the contract price.

[3] The trial court stated it did not question Medina's good faith in this matter.

## PROCEDURAL HISTORY

### I.

### SOUTHWEST'S COMPLAINT AND NEWCASTLE'S CROSS-COMPLAINT

Southwest filed a complaint against Newcastle for unpaid compensation, asserting claims for breach of contract, account stated, open book account, reasonable value, violation of prompt payment statute, enforcement of mechanic's lien, quiet title, and declaratory relief. Newcastle filed an answer to the complaint and filed a cross-complaint for damages and equitable relief against Southwest, asserting claims for breach of written contract, promissory estoppel, promissory fraud, negligent misrepresentation, intentional misrepresentation, breach of the implied covenant of good faith and fair dealing, and removal, release, dismissal, cancellation, striking, and withdrawal of the mechanic's lien recorded for Southwest and Medina against Newcastle.[4] Newcastle's cross-complaint was based on allegations of Southwest's poor workmanship and misrepresentations regarding its licensing status.

### II.

### THE JURY VERDICTS ON LIABILITY AND DAMAGES

After the first phase of the trial addressing liability issues, the jury returned a verdict finding (1) Southwest proved by a preponderance of the evidence Newcastle had breached the painting contract; (2) Newcastle did not prove by a preponderance of the evidence Southwest breached the painting contract, fascia contract, or siding contract; and (3) Newcastle did not prove by a preponderance of the evidence Medina had intentionally or negligently induced Newcastle to contract with Southwest by

---

[4] In addition to Southwest, Newcastle named Villareal and Hector Villareal Construction as cross-defendants in the cross-complaint but voluntarily dismissed them as parties during trial. Newcastle also named Medina as a cross-defendant in the cross-complaint, but the trial court dismissed him during trial after granting his motion for nonsuit.

5

misrepresenting a material fact.[5]  Following the second phase of the trial addressing damages, the jury found Southwest proved by a preponderance of the evidence Newcastle was liable to Southwest for unreimbursed work on the painting contract in the amount of $91,766.89.

III.

THE TRIAL COURT'S STATEMENT OF DECISION ON DISGORGEMENT

As explained by the trial court, the jury's verdicts "left unanswered . . . the two parallel questions that both sides put in the hands of the court, namely, (i) In light of the facts elicited at trial, what portion, if any, of the jury's $91,766 damage figure is collectible by Southwest given the licensure provisions of [section] 7031 and its accompanying jurisprudence?  Or (ii) by contrast, may Newcastle claim disgorgement of the entirety of its payments heretofore made?"

After considering arguments and briefs submitted by the parties as well as evidence in the third phase of the trial in this matter, the trial court concluded in its statement of decision dated November 12, 2021:  "[F]inding that pursuant to said statute and the evidence adduced at trial, Southwest, a Class C licensee which had billed and ostensibly performed Class B licensed work under its contract with Newcastle, is obliged to disgorge to Newcastle the full $252,444 which it had received under their contract, including all sums paid before Southwest engaged a Class B licensee, Villareal Construction."

---

[5]  In the statement of decision, the trial court noted that since the parties filed their pleadings, "[a]long the way there . . . had been (i) causes of action and parties voluntarily dismissed, (ii) a nonsuit order, (iii) the trial court's ruling on a quiet title cause of action, and (iv) a declaratory relief cause of action rendered moot by the liability verdict."  The record does not show how the case was whittled down to the questions presented to the jury on the special verdict form; no party challenges the scope of the jury trial in this appeal.

6

## IV.

SOUTHWEST FILES AN OBJECTION TO THE STATEMENT OF DECISION AND REQUESTS A NEW OR MODIFIED STATEMENT OF DECISION; THE TRIAL COURT OVERRULES SOUTHWEST'S OBJECTION AND DENIES ITS REQUESTS

Southwest filed an objection to the court's tentative statement of decision in which it argued the order requiring Southwest to disgorge the full $252,444 to Newcastle was improper, beyond the court's jurisdiction, and subject to reversal for the reason disgorgement as the basis for an award of damages in any amount was not pleaded by Newcastle in its cross-complaint. Southwest argued Newcastle had only pleaded two theories for affirmative relief for breach of contract (regarding the siding contract only) and fraud (in the form of intentional and/or negligent misrepresentation), and had not asserted a claim for disgorgement under section 7031 or otherwise. Southwest pointed out no request to amend the cross-complaint was ever requested and none was granted.

Southwest also filed a request for a new or modified statement of decision because: "1.) The conclusions drawn by the Court are not supported by the evidence produced at trial; [¶] 2.) The statement is misleading as to the nature of the four independent contracts subject of this litigation or, for that matter, that they are independent and mutually exclusive at all [*sic*]; [¶] 3.) The Court's findings contradict admissions by Newcastle Enterprises as to the independence of contracts; [¶] 4.) The [C]ourt's findings treat undisputed facts as being controverted; and [¶] 5.) There appears to be a reluctance to treat the multiple contracts as independent of one another in the application of [section] 7031. Instead, the Court erroneously treats the four contracts as one. [¶] Clarification of these issues is required."

Southwest also requested the trial court "render clarification in the form of a statement" finding, inter alia, the undisputed evidence established the existence of the parties' separate written contracts and the fact "no funds received by Southwest from Newcastle were applied as payment for any work performed under siding contract

W2088." In conclusion, Southwest stated it "respectfully requests that the Court review its tentative statement of decision and make the above corrections/modifications to bring the decision in line with the evidence."

In a minute order dated November 22, 2021, the trial court stated: "The court has received and reviewed this day (i) Southwest's Objection to Statement of Decision and (ii) Southwest's Request for Statement of Decision. The court has decided to decline the invitation to amend the statement of decision. [Citation]; [citations]. The court also overrules the objection regarding disgorgement."

V.

THE JUDGMENT

Judgment was thereafter entered as follows:

"1. Plaintiff Southwest Painting, Inc. shall have and is hereby awarded a judgment in the sum of $91,766 on its cause of action for breach of contract against defendant Newcastle Enterprises Ltd.;

"2. Cross-defendant Southwest Painting, Inc. shall also have and hereby is awarded a judgment of no liability in its favor on the causes of action against it by Newcastle Enterprises Ltd. on its causes of action for breach of contract and negligent or intentional inducement of contract.

"3. The court having found that Southwest Painting, Inc. transgressed the license requirements of B&PC §7031, it her[e]by orders Southwest to disgorge the entirety of the $252,444[6] which it had received in payments by Newcastle under their contract."

Notice of entry of judgment was served on the parties on February 9, 2022.

---

[6] The trial court did not explain how it calculated the amount of the disgorgement order included in the judgment. In briefing, Newcastle argued it had paid Southwest $252,444 to date for services performed at Castlewood.

8

## VI.

### SOUTHWEST FILES A MOTION TO VACATE THE JUDGMENT AND A MOTION FOR A NEW TRIAL ON THE DISGORGEMENT ISSUES

Southwest filed a motion under Code of Civil Procedure section 663 seeking an order to vacate the judgment. Southwest argued the trial court's disgorgement ruling, by which Southwest was required to return all funds paid to it by Newcastle for painting services, was "[f]ounded upon an '[i]ncorrect or erroneous legal basis[.]'" Specifically, Southwest argued the undisputed evidence showed (as Newcastle's counsel had conceded) the parties had entered into at least three separate contracts, not one integrated contract. Southwest further argued that because it was a fully licensed painting contractor at all relevant times, it was entitled to retain all funds pertaining to the painting and fascia contracts. On these grounds Southwest requested that the court vacate the judgment and enter a new judgment in its favor in the amount of $91,766.89 as awarded by the jury.

Southwest also filed a motion for a new trial on the same grounds. Newcastle filed opposition to each motion. After hearing argument on the motions, on April 2, 2022, the trial court issued a minute order stating the court took both motions under submission to enable "counsel to identify within seven days all trial exhibits other than Trial Exhibit 5 constituting Southwest/Newcastle contracts for siding, fascia, and stone work." Southwest filed a posttrial brief and evidence in response to the trial court's minute order.

## VII.

### THE TRIAL COURT DENIES THE MOTION FOR A NEW TRIAL

On May 31, 2022, the trial court issued a minute order denying the motion for a new trial. Our record does not show the trial court ruled on the motion to vacate the judgment.

9

DISCUSSION

I.

THE ORDER DENYING THE MOTION TO VACATE THE JUDGMENT IS APPEALABLE

On June 22, 2022, Southwest filed its notice of appeal stating it was appealing the judgment and an order after judgment. Newcastle did not file an appeal in this action.

Southwest did not file its notice of appeal within 60 days after the superior court clerk served it with notice of entry of the judgment in this case. Therefore, to the extent Southwest seeks to directly appeal from the judgment itself, its notice of appeal was untimely filed. (Cal. Rules of Court, rule 8.104(a)(1)(A) [notice of appeal must be filed on or before 60 days after superior court clerk served on the party filing the notice of appeal a document entitled "'Notice of Entry'"].)

"'[A]n order denying a motion for new trial is not independently appealable.'" (*K.J. v. Los Angeles Unified School Dist.* (2020) 8 Cal.5th 875, 884.) Southwest does not argue otherwise in its appellate briefs.

As to the motion to vacate the judgment, Code of Civil Procedure section 663a, subdivision (b) provides in relevant part: "[T]he power of the court to rule on a motion to set aside and vacate a judgment shall expire 75 days from the mailing of notice of entry of judgment by the clerk of the court pursuant to Section 664.5 . . . . If that motion is not determined within the 75-day period, or within that period as extended, the effect shall be a denial of the motion without further order of the court."

According to our calculation, the trial court's jurisdiction to rule on Southwest's motion to vacate the judgment expired on April 25 (75 days from the February 9, 2022 date the clerk served Southwest by mail with the notice of entry of judgment). The record does not show the trial court ruled on that motion before it lost jurisdiction, or otherwise.

10

The motion to vacate the judgment is therefore deemed denied by the trial court, by operation of Code of Civil Procedure section 663a, subdivision (b). With regard to motions to vacate the judgment brought under Code of Civil Procedure section 663, such as the one here, the Supreme Court has held: "All our prior cases have interpreted the statute authorizing appeals from postjudgment orders to include appeals of rulings denying section 663 motions. A statutory appeal from a ruling denying a section 663 motion is indeed distinct from an appeal of a trial court judgment and is permissible without regard to whether the issues raised in the appeal from the denial of the section 663 motion overlap with issues that were or could have been raised in an appeal of the judgment. This approach is the most reasonable in light of the text, structure, and context of the relevant statutes, because the statute authorizing appeals from postjudgment motions provides for appeals from postjudgment orders without reference to the substance of the issues analyzed in an order." (*Ryan v. Rosenfeld* (2017) 3 Cal.5th 124, 135.)

## II.

### THE TRIAL COURT ERRED BY FAILING TO GRANT THE MOTION TO VACATE THE JUDGMENT AND ENTER A NEW JUDGMENT

The judgment here incorporated the jury's verdict in favor of Southwest on its claim for breach of the painting contract, finding Newcastle liable to Southwest on that claim in the amount of $91,766.89. The judgment also incorporated the jury's verdict with regard to Newcastle's cross-complaint against Southwest, stating Southwest "shall also have and hereby is awarded a judgment of no liability in its favor on the causes of action against it by Newcastle Enterprises Ltd. on its causes of action for breach of contract or intentional inducement of contract." Neither party has challenged those aspects of the judgment entered in this case.

Southwest's motion to vacate the judgment, which it brought under Code of Civil Procedure section 663, challenged the final portion of the judgment which states:

11

"The court having found that Southwest Painting, Inc. transgressed the license requirements of [section] 7031, it her[e]by orders Southwest to disgorge the entirety of the $252,444 which it had received in payments by Newcastle under their contract." That portion of the judgment conflicts with and presumably operates to cancel the former portion of the judgment awarding Southwest $91,766.89 for unpaid compensation for painting services.

Section 663 of the Code of Civil Procedure provides: "A judgment or decree, when based upon a decision by the court, or the special verdict of a jury, may, upon motion of the party aggrieved, be set aside and vacated by the same court, and another and different judgment entered, for either of the following causes, materially affecting the substantial rights of the party and entitling the party to a different judgment: [¶] 1. Incorrect or erroneous legal basis for the decision, not consistent with or not supported by the facts; and in such case when the judgment is set aside, the statement of decision shall be amended and corrected. [¶] 2. A judgment or decree not consistent with or not supported by the special verdict."

For the following reasons, we conclude Southwest's motion to vacate the judgment and enter a new judgment should have been granted because the challenged portion of the judgment (along with the statement of decision that preceded it) is "[i]ncorrect or [there is an] erroneous legal basis for the decision, not consistent with or not supported by the facts" in its application of section 7031. (Code Civ. Proc., § 663.)

A. *Section 7031 Generally*

Section 7031 is part of the Contractors State License Law (§ 7000 et seq.) which "imposes strict and harsh penalties for a contractor's failure to maintain proper licensure." (*MW Erectors, Inc. v. Niederhauser Ornamental & Metal Works Co., Inc.* (2005) 36 Cal.4th 412, 418 (*MW Erectors*), italics omitted.) Section 7031 "both bars recovery in a court of law for any contractor or subcontractor who performed the act or

12

contract unlicensed (§ 7031(a)) and authorizes a person who utilizes the services of an unlicensed contractor or subcontractor to bring a court action to recover the compensation paid for that unlicensed work (§ 7031, subd. (b)). These parallel methods of statutory deterrence are referred to, respectively, as the "'shield'" and "'sword'" of the Contractors State License Law." (*Kim v. TWA Construction, Inc.* (2022) 78 Cal.App.5th 808, 828 (*Kim*).)

Section 7031(a) provides: "[N]o person engaged in the business or acting in the capacity of a contractor, may bring or maintain any action, or recover in law or equity in any action, in any court of this state for the collection of compensation for the performance *of any act or contract* where a license is required by this chapter without alleging that they were a duly licensed contractor at all times during the performance of that act or contract regardless of the merits of the cause of action brought by the person, except that this prohibition shall not apply to contractors who are each individually licensed under this chapter but who fail to comply with Section 7029." (Italics added.)

Section 7031(b) provides, in part, "a person who utilizes the services of an unlicensed contractor may bring an action in any court of competent jurisdiction in this state to recover all compensation paid to the unlicensed contractor *for performance of any act or contract*." (Italics added.)

B. *The Judgment Relies on the Erroneous Assumption the Parties Entered into a Single Contract*

As the judgment cites section 7031 in ordering Southwest "to disgorge the entirety of the $252,444 which it had received in payments by Newcastle under their contract," the trial court necessarily concluded the parties had a single contract which required the provision of some services for which Southwest was not licensed (e.g., siding installation). Contrary to this assumption, Newcastle has consistently agreed it had

entered into at least three separate written contracts for the provision by Southwest of painting, fascia repair and replacement, and siding installation services, respectively.

At a pretrial conference, the parties' counsel explained the case involved at least three separate contracts as follows:

"The Court: All right. Let me ask this. This came up before. Is there — since you're suing for breach of a contract, is there a single documentary contract with a single date on it?

"[Southwest's counsel]: Your honor, four separate single —

"The Court: That is to say there is no single document. We're litigating four separate documents.

"[Southwest's counsel]: Yes, your Honor.

"The Court: They have different dates.

"[Southwest's counsel]: They do.

"The Court: But they are not novations?

"[Southwest's counsel]: They're separate contracts, your Honor.

"The Court: So each contract is in addition to and not an amendment of an earlier contract.

"[Southwest's counsel]: They are related, your Honor, to the painting and they —

"The Court: Do they make reference to each other? The law has some mechanism for dealing with what we call novations. You can replace one contract within [*sic*] another. That's perfectly fine. You can remand [*sic*] the contract. But if you tend not to do either, then the judge has to sort out whether or not you're abandoning one for the other or something else.

"[Southwest's counsel]: We are not abandoning one for the other. They are separate independent contracts.

"The Court: They cover different subject matters?

14

"[Southwest's counsel]: Different scopes of work, different amounts of money and different —

"The Court: All right. We'll talk about that.

"[Newcastle's counsel]: And your Honor, if I may add they require different types of licenses.

"The Court: So in any event, all four of these contracts are they all signed by both sides?

"[Southwest's counsel]: They are, your Honor.

"The Court: Mr. Romeyn [Newcastle's counsel]?

"[Newcastle's counsel]: Yes, your Honor."

Later, during Newcastle's counsel's opening statement to the jury, counsel stated: "There were actually three contracts, separate independent contracts, that were formed. The first was for a painting contract to paint these 46 units . . . . There was a separate contract to replace this fascia right then and there on the same day. [¶] The next -- ten days later on the 20th, there was a contract to do this stacked stone veneer work."

Copies of the parties' three written contracts were included in their joint list of trial exhibits and were ultimately admitted into evidence during the jury trial as trial exhibits 5, 6, and 101. Newcastle's principal testified at trial the parties had three distinct written contracts: the painting contract, the fascia contract, and the siding contract.

In its post jury trial briefing on the licensure issue, Newcastle acknowledged the existence of the parties' separate contracts. And to its credit, even in the respondent's appellate brief, Newcastle acknowledges the parties' separate contracts for painting, fascia repair and replacement, and siding installation (although it also argued "all contracts entered into were interrelated and, in reality, constituted a single project involving the same structures, same employees, same contracting parties, and same time

15

period. Thus, the work performed cannot be regarded as involving distinct contracts, but [in] reality constituted a single contract".) (Underscoring omitted.)

We decline to construe the parties' three separate written contracts for the performance of different types of services as a single contract for purposes of section 7031. "'In construing a statute, "'we strive to ascertain and effectuate the Legislature's intent.' [Citations.] Because statutory language 'generally provide[s] the most reliable indicator' of that intent [citations], we turn to the words themselves, giving them their 'usual and ordinary meanings' and construing them in context . . . ." [Citation.] "If the language contains no ambiguity, we presume the Legislature meant what it said, and the plain meaning of the statute governs." [Citation.]'" (*MW Erectors, supra*, 36 Cal.4th at p. 426.)

The plain language of section 7031 precludes recovery of compensation and authorizes disgorgement of payments for the performance of an act or a contract by an unlicensed person acting as a contractor. "[G]enerally, '[t]he purpose of the licensing law is to protect the public from incompetence and dishonesty in those who provide building and construction services. [Citation.] The licensing requirements provide minimal assurance that all persons offering such services in California have the requisite skill and character, understand applicable local laws and codes, and know the rudiments of administering a contracting business. [Citations.] [¶] Section 7031 advances this purpose by withholding judicial aid from those who seek compensation for unlicensed contract work. The obvious statutory intent is to discourage persons who have failed to comply with the licensing law from offering or providing their unlicensed services for pay.' [Citations.]" (*Kim, supra*, 78 Cal.App.5th at pp. 823–824, quoting *Hydrotech Systems, Ltd. v. Oasis Waterpark* (1991) 53 Cal.3d 988, 995; see *MW Erectors, supra*, 36 Cal.4th at p. 426 [it is clear the Legislature intended to "impose a stiff all-or-nothing penalty for unlicensed work by specifying that a contractor is barred from *all* recovery for such an 'act or contract' if unlicensed *at any time* while performing it"].)

16

Neither the statutory language nor the Legislative intent behind the Contractors State License Law supports expanding the imposition of the admittedly "strict and harsh penalties for a contractor's failure to maintain proper licensure" (*MW Erectors, Inc., supra*, 36 Cal.4th at p. 418) beyond the scope of the performance of an act or contract at issue. Neither Newcastle nor the trial court has cited authority supporting the application of section 7031 to affect a nonoffending bona fide contract involving a licensed contractor, and we have found none.

Consequently, we conclude the trial court erred by construing the parties' three contracts as a single contract in determining section 7031's application in this case.

C. *Section 7031(a) Did Not Apply to Bar Southwest from Recovering Unpaid Compensation on the Painting Contract as Awarded by the Jury*

The jury found Newcastle breached the painting contract and was liable to Southwest for unpaid compensation on the painting contract in the amount of $91,766.89. It is undisputed that at all relevant times, Southwest was properly licensed to perform the painting services for Newcastle.

As discussed *ante*, section 7031(a) would preclude Southwest from "collection of compensation for the performance *of any act or contract* where a license is required by this chapter" if it had not been "a duly licensed contractor at all times during the performance of that act or contract." (Italics added.) As a licensed painting contractor, section 7031(a) would not apply to bar Southwest from seeking to collect compensation for its painting services on the painting contract. That the parties' contract for painting services was "related" to other contracts in that they too were to be performed at Castlewood, does not render such other contracts part of the painting contract for the purpose of applying section 7031. Newcastle does not cite any legal authority and we have found none that would support the application of section 7031(a)

17

to compensation sought for Southwest's painting services under the painting contract here.

Although the judgment itself does not specifically state the amount awarded to Southwest by the jury was unrecoverable under section 7031(a), the statement of decision acknowledges the disgorgement order under section 7031(b) "[n]aturally . . . would wipe out the jury's $91,766 verdict."

D. *Even If Newcastle Had Pleaded a Disgorgement Claim Under Section 7031(b), There Was No Basis for the Court's Disgorgement Order as to Compensation Southwest Received for Performing on the Painting Contract*

In its cross-complaint, Newcastle asserted claims for breach of contract and claims based on alleged misrepresentations that Southwest also held a Class B license required to perform the stone stacking services provided in the parties' siding contract. Newcastle did not cite section 7031(b) much less plead a claim for disgorgement under that code section in its cross-complaint. Nor did it assert section 7031 or disgorgement as an affirmative defense in its answer to Southwest's complaint.

The first time section 7031 or the issue of disgorgement appears in our record is in the context of motions in limine filed in anticipation of the jury trial. At no time did Newcastle seek to amend its cross-complaint to include a claim seeking that form of affirmative relief. (See *Eisenberg Village etc. v. Suffolk Construction Co., Inc.* (2020) 53 Cal.App.5th 1201, 1215 [by the time plaintiff first alleged a section 7031(b) claim in an amended pleading, it was time-barred by the applicable statute of limitations]; *San Francisco CDC LLC v. Webcor Construction L.P.* (2021) 62 Cal.App.5th 266, 272 [same].)

Even assuming a disgorgement claim had been properly before the trial court, for the same reasons section 7031(a) did not apply to Southwest's provision of painting services under the painting contract, section 7031(b) did not apply because it is undisputed at all relevant times Southwest was properly licensed to perform the painting

18

services provided in the painting contract.  There is no dispute the disgorgement order in the judgment includes compensation received by Southwest for painting services under the painting contract.  The disgorgement order's inclusion of those amounts constitutes error.  As explained in the statement of decision, the effect of the disgorgement order precludes or "wipes out" Southwest's ability to collect the $91,766 amount awarded it by jury.  We therefore reverse the trial court's order tacitly denying the motion to vacate the judgment and enter a new judgment.

## III.

### WE REMAND WITH DIRECTIONS FOR THE TRIAL COURT TO VACATE THE JUDGMENT AND ENTER A NEW JUDGMENT AND ISSUE AN AMENDED AND CORRECTED STATEMENT OF DECISION IN ACCORDANCE WITH OUR OPINION

On remand, we direct the trial court to vacate the judgment and enter a new judgment that credits Southwest $91,766.89 for unreimbursed work on the painting contract as awarded by the jury.  The new judgment shall also include a new disgorgement order, if any, that at a minimum is reduced from the original amount of $252,444 by the amount Newcastle paid to Southwest for painting services pursuant to the painting contract.

On remand, the trial court shall also determine whether to omit or further reduce the amount of the disgorgement order by amounts included in the original judgment after considering whether:  (1) Newcastle properly pleaded a disgorgement claim under section 7031(b) or whether such a claim is otherwise properly before the court; (2) Southwest performed services under the fascia contract that were incidental and supplemental to the performance of the painting contract, within the meaning of section

19

7059, subdivision (a),[7] so as to render such amounts ineligible for disgorgement;[8] and (3) Southwest should be required to disgorge any funds it received as reimbursement for expenses, pass-through charges, and/or unused but unreturned materials within the meaning of section 7045.[9]

The trial court shall thereafter prepare an amended and corrected statement of decision and enter a new judgment in accordance with our opinion.

## DISPOSITION

The order denying the motion to vacate the judgment and enter a new judgment is reversed. On remand, we direct the court to vacate its judgment and enter a new judgment and an amended and corrected statement of decision, that, at a minimum, award Southwest $91,766.89 for unpaid compensation for painting services in accordance

---

[7] Section 7059, subdivision (a) provides: "The board may adopt reasonably necessary rules and regulations to effect the classification of contractors in a manner consistent with established usage and procedure as found in the construction business, and may limit the field and scope of the operations of a licensed contractor to those in which he or she is classified and qualified to engage, as defined by Sections 7055, 7056, 7057, and 7058. A licensee may make application for classification and be classified in more than one classification if the licensee meets the qualifications prescribed by the board for such additional classification or classifications. The application shall be in a form as prescribed by the registrar and shall be accompanied by the application fee fixed by this chapter. No license fee shall be charged for an additional classification or classifications. [¶] Nothing contained in this section shall prohibit a specialty contractor from taking and executing a contract involving the use of two or more crafts or trades, *if the performance of the work in the crafts or trades, other than in which he or she is licensed, is incidental and supplemental to the performance of the work in the craft for which the specialty contractor is licensed*." (Italics added.)

[8] Citing section 7059, Southwest argues in its opening brief it "is entitled to the funds paid it for the fascia boards since their repair was necessary to painting them" as confirmed by Newcastle's expert witness's trial testimony.

[9] Section 7045 provides in relevant part: "This chapter does not apply to the sale or installation of any finished products, materials, or articles of merchandise that do not become a fixed part of the structure."

20

with the jury's verdict, and decrease the disgorgement order in the original judgment by the amount of compensation Southwest received for performing painting services pursuant to the painting contract.

We further direct the court on remand to consider whether the disgorgement award should be altogether omitted from the new judgment after considering whether Newcastle ever pleaded a disgorgement claim under section 7031(b) or whether such a claim was otherwise properly before the trial court.

Finally, we direct the court to consider whether in the new judgment, the disgorgement award, if any, should be further reduced by—to the extent they were included in the original award in the judgment— (1) the amount of compensation Southwest received for fascia work, if any, that was incidental and supplemental to the performance of painting services within the meaning of section 7059, and/or (2) the amount, if any, Southwest was reimbursed for expenses, pass-through charges, and/or unused but unreturned materials within the meaning of section 7045.

Appellant to recover costs on appeal.


MOTOIKE, J.

WE CONCUR:


GOETHALS, ACTING P. J.


DELANEY, J.